**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FODDRELL,**

                         **Petitioner,**

        *-against-*

**LAVALLEY**

                         **Respondent.**

12 Civ. 6562 (CS) (LMS)

**REPORT AND**
**RECOMMENDATION**

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.[1]**

On August 27, 2012, Petitioner, Dyego Foddrell ("Petitioner"), filed a petition for a writ

of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254, challenging his 2004 judgment of

conviction for one count of Depraved Indifference Murder in the Second Degree (N.Y. Penal

Law § 125.25(4)), one count of Endangering the Welfare of a Minor (N.Y. Penal Law §

260.10(1)), and his aggregate indeterminate term of imprisonment of from 25 years to life in

prison. D.E. 1, at 1.

Petitioner asserts the following three grounds for relief: (1) Petitioner was denied due

process when the court declined to suppress Petitioner's statements to the police and admitted the

statements at trial (D.E. 3, at 5), (2) Petitioner was denied due process when the trial court

declined to grant a mistrial after a juror made improper comments (D.E. 3, at 10), and (3)

Petitioner was deprived of the effective assistance of appellate counsel (D.E. 3, at 12).

---

[1] By order dated December 11, 2012, this matter was referred to me by the Honorable
Cathy Seibel, U.S.D.J., to whom the matter was assigned. Order of Reference, December 11,
2012, D.E. 10.

For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that this petition should be dismissed in its entirety.

## BACKGROUND

### A. The Crime

Respondent's factual recitation is materially consistent with the record. Accordingly, the Court adopts Respondent's factual recitation, and assumes the reader's familiarity with the information contained therein. In brief, however, in December of 2002, Petitioner lived with his girlfriend, Sharrell Johnson, and Johnson's two year old son, Maurice Campbell, Jr. During the weeks preceding December 6, 2002, Petitioner and Johnson had been hitting Maurice whenever he wet the bed, soiled himself, or misbehaved. On the evening of December 6, 2002, Petitioner was home with Maurice while Johnson was at work. After Maurice defecated in his pants, Petitioner repeatedly hit him in the head and abdomen so severely that, when Johnson returned home, Maurice was unconscious. Although Johnson insisted that they get help, Petitioner initially disagreed; he warned Johnson that seeking medical attention would result in Maurice being taken away from them. Johnson ultimately prevailed, and they took Maurice to a hospital. There, Petitioner fabricated stories to explain Maurice's dire condition and the scores of bruises over his body. Less than two hours later, Maurice died; he had bled to death from multiple internal injuries. D.E. 11, at p. 2.

### B. Procedural History

The Westchester County Grand Jury charged Petitioner and Johnson with two counts of Murder in the Second Degree (N.Y. Penal Law §§ 125.25(2), (4)), Manslaughter in the First Degree (N.Y. Penal Law § 125.20(4)), and Endangering the Welfare of a Child (N.Y. Penal Law § 260.10 (1)). D.E. 12, Ex. 1. On May 9, 2003, Petitioner moved to suppress post-arrest

statements that he had made to the police.  D.E. 12, Ex. 2.  By decision and order dated June 10,

2003, the Supreme Court, Westchester County (Smith, J.), ordered that a *Huntley*[2] hearing be

conducted to determine the admissibility of the statements.  D.E. 12, Ex. 3.  Pursuant to that

order, a *Huntley* hearing was conducted in the Supreme Court, Westchester County, on August 7,

8, and 11, of 2003.  By decision and order dated September 9, 2003, the court granted

Petitioner's motion in part and denied it in part.  D.E. 12, Ex. 4.  The court (Smith, J.), found that

Petitioner was in custody when the police detained him at the hospital and transported him to an

interview room, that Petitioner's statements which were made in response to Detective Michael

LaRotunda's pre-*Miranda* questioning should be suppressed, that the pre-*Miranda* questioning

rendered Petitioner's subsequent *Miranda* waiver invalid, and that Petitioner's post-*Miranda*

statements to LaRotunda should be suppressed.  *Id.* at 6, 8-9.  Similarly, the court suppressed

Petitioner's subsequent oral and videotaped statements to Detective George Ossipo because the

court found that there was "no pronounced break" between the questioning of Petitioner by

LaRotunda and Ossipo.  *Id.* at 9.  The court, however, did not suppress Petitioner's videotaped

statements to Detective Arthur Glover, made several hours later and after another recitation of

*Miranda* warnings, because the court determined that this final statement was sufficiently

attenuated from the earlier statements to cure any taint from those earlier statements.  *Id.*

Following a jury trial, on June 29, 2004, Petitioner was convicted of Murder in the

Second Degree under count two of the indictment, and Endangering the Welfare of a Child.  D.E.

11, at 4.  On August 24, 2004, Petitioner was sentenced to an aggregate indeterminate term of

imprisonment of from 25 years to life in prison.  *Id.*

---

[2] *People v. Huntley,* 15 N.Y.2d 72 (1965).

On December 31, 2008, Petitioner filed a direct appeal in the Appellate Division, Second Department.  Petitioner argued that (1) the trial court failed to properly charge depraved indifference murder to the jury in accordance with *People v. Feingold*, 7 N.Y.3d 288 (2006), (2) Petitioner was denied a fair and impartial jury because of remarks made by the trial court during jury selection, (3) all of Petitioner's post-arrest statements to the police should have been suppressed, and (4) the trial court erroneously denied a mistrial motion made by Petitioner based upon a mid-trial comment made by one of the jurors.  D.E. 12, Ex. 5.

On September 29, 2009, the Appellate Division, Second Department, unanimously affirmed Petitioner's judgment of conviction.  *People v. Foddrell*, 65 A.D.3d 1375 (2d Dept. 2009).  The Appellate Division found that Petitioner's challenge to the trial court's depraved indifference murder instruction was unpreserved for appellate review and declined to review the issue in the interest of justice.  *Id.* at 1376.  Further, the Appellate Division found that Petitioner's motion to suppress his videotaped statement was properly denied because the statement was preceded by the re-administration of *Miranda* warnings and was attenuated from the earlier statements that were suppressed by the lower court.  *Id.*  The Appellate Division also found that (1) Petitioner's challenge to the trial court's comments during jury selection was unpreserved for appellate review and review of that issue in the interests of justice was unwarranted, (2) the trial court had properly denied Petitioner's mistrial motion based upon a juror's mid-trial comment, and (3) Petitioner's remaining contentions were meritless.  *Id.*

On October 29, 2009, Petitioner sought leave from the New York State Court of Appeals to appeal from the Appellate Division's affirmance of Petitioner's judgment of conviction.  D.E. 12, Ex. 8.  Petitioner sought leave, in part, "on the grounds that the Appellate Division, Second Department, made reversible error on all the grounds they mentioned in their decision."  D.E. 12,

Ex. 8.  On December 22, 2009, a Judge of the New York State Court of Appeals denied

Petitioner's leave application.  *People v. Foddrell*, 13 N.Y.3d 910 (2009).

On December 16, 2010, Petitioner sought a writ of error *coram nobis* in the Appellate

Division, Second Department, on the ground that he was denied the effective assistance of

appellate counsel.  D.E. 12, Ex. 10.  Petitioner claimed that his appellate attorney was ineffective

because counsel failed to argue that (1) Petitioner's depraved indifference murder conviction was

based upon legally insufficient evidence because there is "no doubt" that he "intentionally killed"

the victim, (2) Petitioner's trial counsel was ineffective for not raising a legal insufficiency

argument at trial, and (3) Petitioner was deprived of a fair trial because testimony that the

victim's anus was "gaping" impermissibly suggested to the jury that Petitioner had inserted an

object into the victim's anus.  *Id.*

On May 17, 2011, the Appellate Division denied Petitioner's request for a writ of error

*coram nobis* on the ground that Petitioner had failed to establish that he was deprived of the

effective assistance of appellate counsel.  *People v. Foddrell*, 84 A.D.3d 1113 (2011); D.E. 12,

Ex. 15.  On August 11, 2011, a Judge of the New York State Court of Appeals denied

Petitioner's application for leave to appeal from the denial of his petition for a writ of error

*coram nobis.  People v. Foddrell*, 17 N.Y.3d 816 (2011).

On November 1, 2011, Petitioner submitted a second petition for a writ of error *coram

nobis*.  D.E. 12, Ex. 18.  In his second petition, Petitioner argued that appellate counsel was

ineffective because he did not argue on appeal that Petitioner had been denied a fair trial when

the court failed to either strike the testimony of Sharrell Johnson, after she repeatedly consulted

with her attorney during her direct testimony, or instruct the jury that it could consider the

consultations in evaluating Johnson's credibility.  *Id.*  Furthermore, Petitioner argued that his

appellate counsel was ineffective for not challenging the effectiveness of his trial counsel on the ground that trial counsel allegedly failed to object to remarks made by the trial court to, and in front of, prospective jurors and a witness. *Id.*

On April 24, 2012, the Appellate Division denied Petitioner's second petition for a writ of error *coram nobis* on the ground that Petitioner failed to establish that he was deprived of the effective assistance of appellate counsel. *People v. Foddrell*, 94 A.D.3d 1138 (2012). On July 12, 2012, Petitioner sought leave to appeal to the New York State Court of Appeals from the denial of his application for a writ of error *coram nobis*. D.E. 12, Ex. 22. On August 10, 2012, the New York State Court of Appeals denied Petitioner's leave application. *People v. Foddrell*, 19 N.Y.3d 996 (2012).

In November of 2011, Petitioner moved to vacate his judgment of conviction pursuant to NYCPL § 440.10 on the ground that  he was denied a fair trial because (1) his trial counsel had a criminal record, and (2) the trial court made improper statements to both the jury and witnesses. D.E. 12, Ex. 24. On February 27, 2012, the state court denied Petitioner's NYCPL § 440.10 motion. D.E. 12, Ex. 27. On August 2, 2012, an Associate Justice of the Appellate Division, Second Department, denied Petitioner's application for leave to appeal from the denial of his NYCPL § 440.10 motion. D.E. 12, Ex. 28.

On August 27, 2012, Petitioner submitted his instant petition for a writ of habeas corpus. D.E. 2. On January 18, 2013, Respondent submitted an affirmation and memorandum of law in opposition. D.E. 11-12. On February 27, 2013, Petitioner submitted a reply. D.E. 16.

# DISCUSSION

## I.   Applicable Law

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998), citing *Reed v. Farley*, 512 U.S. 339, 354 (1994).   To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.

Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.   If a petitioner has met these threshold requirements, a federal district court generally may hear an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).   The court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).

Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.   28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971).   In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982).   The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b)(1), (c):

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i) there is an absence of available State corrective process; or

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. *Picard*, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." *Daye*, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. *Klein*, 667 F.2d at 282 (internal citations omitted). A claim may be considered "fairly presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights;

8

or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. *See*

*Daye*, 696 F.2d at 194; *Irving v. Reid*, 624 F. Supp. 787, 789 (S.D.N.Y. 1985). A claim that has

not been "fairly presented" in state court is procedurally defaulted and is precluded from federal

habeas review, unless Petitioner can show cause for the default, and prejudice resulting from the

alleged violation of federal law, or that a fundamental miscarriage of justice will occur if the

claim is not considered. *Coleman*, 501 U.S. at 750; *Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d

Circ. 2005).

Second, having fairly presented his or her federal constitutional claim to the appropriate

state court and having been denied relief, the petitioner must appeal his or her conviction to the

highest state court. *Klein*, 667 F.2d at 282. Where a petitioner fails to present his or her federal

constitutional claim to the highest state court, the claim cannot be considered exhausted. *Id.*

(citing *Williams v. Greco*, 442 F.Supp. 831, 833 (S.D.N.Y. 1977)). There is, however, another

avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies

by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state

methods for collaterally attacking his or her state conviction. *See id.*; *see also Johnson v. Metz*,

609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present

claim in the course of his direct appeals in New York state courts to proceed by filing a motion

to vacate judgment pursuant to NYCPL § 440.10). If collateral relief is denied, the petitioner

may satisfy the exhaustion requirement by employing the state appellate procedures available for

review of such denial. *Klein*, 667 F.2d at 282-83. A petitioner "need not have invoked every

possible avenue of state court review." *Keane*, 394 F.3d at 73. Instead, a petitioner must give

the state courts "one full opportunity" to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526

U.S. 838, 845 (1999). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court unless he or she can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Even where a timely and exhausted habeas claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon an "adequate and independent finding of a procedural default" to deny it. *Harris*, 489 U.S. at 262; *see also Coleman*, 501 U.S. at 730; *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740). A decision will be "adequate" if it is " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

Provided a claim meets all procedural requirements, the federal court must apply AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' " *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Torres*, 340 F.3d at 68 (internal quotation marks and citation omitted).  The federal court must determine whether the state court's application of clearly established federal law was objectively unreasonable.  *Id.* at 68-69 (citation omitted).  In the Second Circuit, "the objectively unreasonable standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Id.* (internal quotation marks and citations omitted).

## II.   <u>Exhaustion</u>

Petitioner sought leave to appeal from the New York State Court of Appeals from the Appellate Division's affirmance of Petitioner's judgment of conviction "on the grounds that the Appellate Division, Second Department, made reversible error on all the grounds they mentioned in their decision.  In particular, the claim regarding the depraved indifference jury charge was decided in error by the court below." D.E. 12, Ex. 8.  Respondent asserts that Petitioner's specific request that the New York State Court of Appeals grant leave to appeal with respect to Petitioner's claim regarding the court's depraved indifference jury charge "focus[ed] the Court's attention on only one of the issues previously presented to the Appellate Division" and,

11

therefore, Petitioner did not "fairly apprise" the court of Petitioner's remaining claims. Accordingly, Respondent argues that Petitioner's claim that his videotaped statement should have been suppressed, and his claim that the trial court should have granted a mistrial based on an improper juror remark, are unexhausted.   D.E. 12, at pp. 21-22, 34.

Petitioner's request that the New York State Court of Appeals review a certain claim "[i]n particular" did not negate Petitioner's request that the court review "all of the grounds…mentioned" in the Appellate Division's decision.  The overall import of Petitioner's leave application and the clear language in the leave application which requested review of the claims addressed in the Appellate Division's decision, fairly presented those claims to the New York State Court of Appeals. *See e.g., Morgan v. Bennet,* 204 F.3d 360 (2d Cir. 2002) (holding that Petitioner's leave application to the New York State Court of Appeals exhausted his claims for federal habeas review where Petitioner requested that the Court consider "all of the issues outlined in defendant-appellant's brief and *pro se* supplemental brief," despite the fact that a follow up letter specifically directed the court's attention to a specific claim); *see also, Galdamez v. Keane,* 394 F.3d 68, 73-76 (2005).  Accordingly, this Court concludes, and respectfully recommends that Your Honor conclude, that all of Petitioner's claims in the instant Petition are exhausted for the purpose of federal habeas review.

## III.   **Petitioner's Habeas Claims**

### **Admissibility of Petitioner's Statements to the Police**

Petitioner claims that his statement to Detective Glover should have been suppressed because it was obtained as part of an unconstitutional "two-step" process.  Specifically, Petitioner asserts that his video-taped statement to Glover, which was preceded by the issuance of *Miranda* warnings, was only made after Petitioner had previously made lengthy inculpatory

statements to the police without having been advised of his *Miranda* rights.  Petitioner asserts

that, although his first statement was ultimately suppressed, his second statement was

inextricably linked to the first statement and, therefore, was tainted by the first,

unconstitutionally obtained statement.  In rejecting this claim, the Appellate Division held that:

> Contrary to the defendant's contention, his videotaped statements
> to Detective Glover, made after the readministration of *Miranda*
> warnings (*see Miranda v Arizona*, 384 US 436 [1966]), were
> properly admitted. These post-*Miranda* statements were attenuated
> from his earlier pre-*Miranda* statements to police, as there was a
> definite and pronounced break in the questioning (*see People v
> Paulman*, 5 NY3d 122, 130 [2005]; *People v Sepulveda*, 52 AD3d
> 539, 540 [2008]; *People v Vachet*, 5 AD3d 700, 702 [2004]).

*Foddrell,* 65 A.D.3d at 1376.  This merit-based determination was neither contrary to nor an

unreasonable application of Supreme Court precedent.

### The Law

Where a petitioner's initial statement is obtained in violation of the petitioner's

constitutional rights, such violation "does not render his [or her] later, fully warned confessions

inadmissible."  *Nova v. Bartlett,* 211 F.3d 705, 708 (2d Cir. 2000).  Indeed, "a suspect who has

once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his

[or her] rights and confessing after he [or she] has been given the requisite *Miranda* warnings."

*Oregon v. Elstad*, 470 U.S. 298 (1985).  "It is an unwarranted extension of *Miranda* to hold that

a simple failure to administer the warnings, unaccompanied by any actual coercion or other

circumstances calculated to undermine the suspect's ability to exercise his [or her] free will, so

taints the investigatory process that a subsequent voluntary and informed waiver is ineffective

for some indeterminate period."  *Id.* at 309.

One exception to this rule is when police utilize a deliberate strategy "to undermine the

*Miranda* warnings."  *Missouri v. Seibert,* 542 U.S. 616 (2004).  Namely, it is improper for the

police to conduct an "intentionally *un-Mirandized* custodial interrogation to obtain a full

confession, and then giv[e] *Miranda* warnings later to secure a *Mirandized* reiteration thereof."

*Andrago v. Chappius*, No. 14 Civ. 7716 (JPO), 2015 WL 4039839 at *14 (S.D.N.Y. July 1,

2015); *United States v. Carter,* 489 F.3d 528, 536 (2d Cir. 2007) (limiting *Seibert'* s exception to

cases where the police deliberately used a two-step interrogation strategy). *See also Elstad,* 470

U.S. at 314 (holding that subsequent *Mirandized* statements are admissible "absent deliberately

coercive or improper tactics in obtaining the initial statement"). *Seibert* identified a "series of

relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective

enough to accomplish their object[,]" including "the completeness and detail of the questions and

answers in the first round of interrogation, the overlapping content of the two statements, the

timing and setting of the first and the second, the continuity of police personnel, and the degree

to which the interrogator's questions treated the second round as continuous with the first."

*Seibert,* 542 U.S. at 615.

### The Facts

Petitioner was first taken into custody at approximately 1:00 AM.  Between 1:00 AM and

2:00 AM he was asked pedigree questions by various detectives.  From 1:30 AM to 4:25 AM,

Detective Michael LaRotunda interviewed Petitioner and elicited both pedigree information and

inculpatory information.  At 4:25 AM, LaRotunda read Petitioner his *Miranda* rights and

Petitioner acknowledged his waiver of those rights by initialing each right on a printed form.

D.E. 12, Ex. 4, at 4.  LaRotunda continued questioning Petitioner until 5:00 AM, during which

time LaRotunda elicited further incriminating information from Petitioner.  From 5:00 AM until

8:30 AM, Detective George Ossipo interviewed Petitioner and elicited additional incriminating

information.  Thereafter, from 8:42 AM until 10:19 AM, Ossipo videotaped his continued

interview with Petitioner.  Petitioner was unaware that he was being videotaped.  Prior to the

interview, Ossipo reviewed with Petitioner the *Miranda* form that Petitioner had previously

signed.  During that interview Petitioner, once again, made incriminating statements.  The

incriminating statements Petitioner made during these various interviews related to his treatment

of the victim prior to the date of the incident.  *Id.* at 1-5.

      Between 10:19 AM and 2:00 PM, Petitioner was not interviewed and was left alone in an

interview room.  At approximately 2:00 PM, Petitioner was moved into a new interview room,

and Detective Arthur Glover conducted a thirty-seven minute, videotaped interview of Petitioner.

Petitioner was unaware that he was being recorded and, prior to the interview, Glover read

Petitioner his *Miranda* rights.  Petitioner orally waived those rights.  None of the detectives who

had conducted the previous interviews were present in the room during this interview.  During

this final interview Petitioner, for the first time, made incriminating statements regarding the day

of the incident.  Namely, Petitioner admitted, among other things, that he hit the victim hard in

the stomach because the victim had defecated in his pants.  D.E. 12, Ex. 4, at 6.

      In response to Petitioner's omnibus motion, in which he sought to suppress his various

statements, the state court held a three day hearing, after which the court suppressed the

statements Petitioner had made between the time of his arrest and 10:19 AM.  The court held that

Petitioner's initial pre-*Miranda* statements to LaRotunda were made in the context of a custodial

interrogation and were made in response to questions that "would conceivably elicit inculptory

responses."  Accordingly, the court suppressed those statements.  The court further held that

Petitioner's post-*Miranda* statements to LaRotunda and Ossipo were tainted by Petitioner's

earlier statements to LaRotunda and, therefore, the court suppressed those statements.  The court

held that Petitioner's videotaped statements to Glover, which Petitioner made after "knowingly,

intelligently and voluntary" waiving his *Miranda* rights, were sufficiently attenuated from the

prior statements that they were not tainted by the prior, inadmissible, statements.  In support of

this finding, the court relied on the following factors: (1) there was close to a four hour break

between the time the suppressed statements were made and Petitioner's interview with Glover,

(2) Petitioner was moved into a new interrogation room, (3) the detectives who were involved in

the prior interrogations were not present for the interview with Glover, (4) Glover re-issued

*Miranda* warnings, (5) "the critical statements made during [the session with Glover]... were not

previously divulged in [Petitioner's] prior sessions," and (6) there was no evidence in the record

that Petitioner felt so committed by his prior oral statements that he believed it was futile to

invoke his right to remain silent prior to his interview with Glover.  D.E. 12, Ex. 4, at 10-12.

*Analysis*

The state court in this case correctly identified the governing principles of federal law,

including the non-exhaustive list of factors cited by *Seibert* in evaluating whether a defendant's

statement was tainted by a prior, unconstitutionally obtained statement, and reasonably applied

those factors to the facts in this case.  Specifically, the state court identified the (1) four hour

break in time between Petitioner's statement to Ossipo and his post-*Miranda* statement to Glover,

(2) change in the identity of the interviewer, (3) change in the location of the interview, (4) re-

issuance of *Miranda* warnings, and (4) difference in the nature of the inculpatory statements

made by Petitioner in his initial interviews and in his interview with Glover.  In light of these

factors, it was objectively reasonable for the state court to determine that the police did not

engage in a deliberate, two-step strategy to obtain Petitioner's statement to Glover.  *See Bobby v.*

*Dixon,* 132 S.Ct. 26 (2011) (finding that the police did not engage in the type of two-step

interrogation technique deemed unconstitutional in *Seibert,* where four hours passed between the

unwarned interrogation and the defendant's receipt of *Miranda* warnings, there was a change in

the location of the interview, and where the nature of the two statements was different).

Accordingly, the Appellate Division's determination that Petitioner's "post-*Miranda* statements

were attenuated from his earlier pre-*Miranda* statements to police, as there was a definite and

pronounced break in the questioning" (*Foddrell,* 65 A.D.3d at 1376), was not contrary to or an

unreasonable application of *Seibert* and its progeny.  Therefore, I conclude, and respectfully

recommend that Your Honor conclude, that Petitioner's claim should be rejected.

## Juror Misconduct

Petitioner claims that an allegedly improper remark by a juror prejudiced the other jurors

and that the trial court erred in declining to order a mistrial.  D.E. 12, Ex. 5, at 19-20.  In

rejecting this claim on direct appeal, the Appellate Division held as follows:

> Contrary to the defendant's contention, the trial court properly
> denied his motion for a mistrial on the ground that a juror had
> made an inappropriate pre-deliberation comment (*see People v.
> Mack,* 224 A.D.2d 448, 449, 637 N.Y.S.2d 739; *People v. Horney,*
> 112 A.D.2d 841, 493 N.Y.S.2d 130).  After dismissing that juror,
> the court individually questioned the remaining jurors.  Twelve
> jurors did not remember the comment and two jurors remembered
> that a comment was made but could not remember its substance
> (*see People v. Mack,* 224 A.D.2d 448, 449, 637 N.Y.S.2d 737).
> All jurors stated that they could remain fair and impartial.  Under
> these circumstances, we find no reason to overturn the trial court's
> determination that a mistrial was not warranted (*Id.; see also
> People v. Simon,* 224 A.D.2d 458, 459, 638 N.Y.S.2d 113; *People
> v. Horney,* 112 A.D.2d 841, 493 N.Y.S.2d 130).

*Foddrell,* 65 A.D.3d at 1377.  This finding was not contrary to or an unreasonable application of

Supreme Court precedent.

Due process requires "a jury capable and willing to decide the case solely on the evidence

before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the

effect of such occurrences when they happen." *Smith v. Phillips,* 455 U.S. 209, 217 (1982).  The

remedy for an allegation of juror partiality is a hearing in which the petitioner has an opportunity to prove actual bias. *Smith,* 455 U.S. at 215.  A state court's factual determination that a jury was impartial is entitled to a presumption of correctness, which may be overcome only by convincing evidence. *Id.* at 946; *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 813 (2d Cir. 2000); 28 U.S.C. § 2254(e)(1).  Indeed, "the Supreme Court has made it clear that 'the trial court's findings of impartiality [may] be overturned only for 'manifest error.' " *Brown v. Perlman,* No. 07 Civ. 8672 (RMB)(AJP) 2008 WL 2009220 at *25 (S.D.N.Y. May 8, 2008) (alteration in original), citing *Knapp v. Leonardo,* 46 F.3d 170, 176 (2d Cir. 1995), report and recommendation adopted, 2008 WL 2545066.  Moreover, in determining whether a juror is qualified, " '[t]he trial judge must be given wide discretion to decide upon the appropriate course to take,' given his or her unique ability to personally observe the jurors in question." *Id.*

Here, during Petitioner's trial, juror Elaine Markfield requested to speak with the court. Markfield, outside the presence of the other jurors, and in the presence of Petitioner and the attorneys, informed the court that the previous week, when the jurors were together in the courthouse elevator, another juror, Jan Yablow, "made some comment to the effect that the deliberations should only take five minutes."  In response, "[e]veryone sort of giggled and laughed that that was it."  The court instructed Markfield not to discuss what had been said with anyone and excused her from the courtroom.  T. 883-87.[3]  The court then brought Yablow into the courtroom and questioned him.  Yablow stated that he did not remember making such a remark but that if he had made the remark, he was "joking."  The court asked Petitioner if he had any questions and he declined.  At Petitioner's request, the court dismissed Yablow.  T. 888-89.

---

[3] Numerals preceded by "JS." Refer to the transcript of the jury selection in Petitioner's case and those preceded by "T." refer to the transcript of Petitioners trial.

Thereafter, the court informed the prosecutor and Petitioner that it would question each of the remaining jurors individually. The court advised the parties that it would not repeat the alleged improper remark. Rather, the court would advise each juror that another juror had made an improper remark and ask each juror if he or she could remain fair and impartial. Petitioner agreed to proceed in this fashion. Nine of the jurors did not recall any remark. Three jurors recalled a remark having been made but could not recall a specific remark. One juror recalled that another juror had said something to the effect that the jury was "stuck in jail." All of the jurors stated that they could keep an open mind or would be fair and impartial, and would listen to the evidence and follow the law. The court also permitted both parties to ask questions of the jurors but neither counsel asked any questions. T. 889-917. At the conclusion of this questioning, Petitioner moved for a mistrial. The court found that the jurors had all "seemed very sincere…that they would be fair and impartial." The court further noted that it "had no problem granting a mistrial if [it thought] they were lying to us." The court denied Petitioner's request for a mistrial. T. 920.

This record establishes that the trial court engaged in the precise remedy contemplated by the Supreme Court in cases of possible juror partiality. The court, after engaging in a thorough, individualized assessment of each juror, dismissed the juror who allegedly made the inappropriate comment, and determined that the remaining jurors were sincere in their averments that they could be fair and impartial. Petitioner has failed to rebut the presumption of correctness that attaches to this factual determination. *See* 28 U.S.C. § 2254(e)(1). Further, the court's questioning revealed that none of the jurors could recall the comment that juror Markfield had attributed to Yablow. It is evident, therefore, that the court took great care to ensure that Petitioner received a fair trial and had the benefit of a fair and impartial jury. Accordingly, the

Appellate Division's determination that the trial court properly denied Petitioner's motion for a mistrial was not contrary to or an unreasonable application of Supreme Court precedent. Therefore, this Court concludes, and respectfully recommends that Your Honor conclude, that Petitioner's claim should be denied.

## Ineffective Assistance of Appellate Counsel

Petitioner asserts that he was deprived of the effective assistance of appellate counsel.  In rejecting Petitioner's claims of ineffective assistance of appellate counsel (which Petitioner raised in two separate applications), the Appellate Division held in two decisions that "appellant has failed to establish that he was denied the effective assistance of appellate counsel." *Foddrell*, 94 A.D.3d at 1138; *Foddrell*, 84 A.D.3d at 1113.  These merit-based determinations "fail[] to explicate a coherent rationale for [the Appellate Division's] rejection of petitioner's claim[s]" and, therefore, this Court must determine whether the Appellate Division's "ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent"; in this case, *Strickland v. Washington,* 466 U.S. 668 (1984).  *Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir. 2001) (citations omitted).

Under *Strickland*, Petitioner must show that his appellate counsel's representation was "fundamentally defective" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687.  Specifically, "[t]o establish prejudice in the appellate context, a petitioner must show that, had his [or her] claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015), citing *Claudio v. Scully*, 982 F.2d 798 (2d Cir. 1992).  Satisfying this burden is particularly difficult in the habeas context because "even a strong case for relief does not mean

20

the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.  Both the

AEDPA and *Strickland* standards are "highly deferential," and "when the two apply in tandem,

review is 'doubly' so." *Id.* at 788 (citations omitted).  "The question is whether there is any

reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Moreover, the Supreme Court has specifically noted that appellate counsel is not required

to raise every "colorable" claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  Rather, an

important role of the appellate advocate is to "examine the record with a view to selecting the

most promising issues for review"; in other words, to winnow "out the weaker arguments on

appeal and focus[] on one central issue if possible, or at most on a few key issues." *Id.* at 752-

53.

Petitioner claims that appellate counsel should have argued on direct appeal that trial

counsel was ineffective in failing to move to dismiss the charges on the ground that there was

insufficient evidence of depraved indifference murder.  Specifically, Petitioner asserts that trial

counsel should have anticipated a change in New York Law whereby, after Petitioner's trial, the

New York State Court of Appeals determined that depraved indifference murder was a distinct

mental state (*see People v. Feingold,* 7 N.Y.3d 288 (2006)), and not, as the court had previously

held, a "definition of the factual setting in which the risk creating conduct must occur" (*People v.

Register,* 60 N.Y.2d 270, 276 (2006)).  Petitioner asserts that, based on this anticipated change in

the law, trial counsel should have argued that there was legally insufficient evidence that

Petitioner possessed the specific mental state of depraved indifference murder.  Counsel,

however, cannot be deemed ineffective for having failed to anticipate this change in the law with

respect to depraved indifference murder.  *See, e.g., Jameson v. Coughlin,* 22 F.3d 427, 429 (2d

Cir. 1994) ("[C]ounsel [cannot] be deemed incompetent for failing to predict that the New York

Court of Appeals would later overrule the Second Department's reasonable interpretation of New York law."), *cert. denied,* 513 U.S. 888 (1994).  Indeed, "while perfect counsel might have made this argument based on various dissenting opinions and articles…, *Strickland* does not require perfection." *Sanchez v. Lee,* No. 10 Civ. 7719 (PKC)(AJP), 2011 WL 924859 at *33 (S.D.N.Y. March 16, 2011).

Trial counsel also cannot be deemed ineffective for failing to argue that the evidence was legally insufficient under either the definition of depraved indifference murder in effect at the time of Petitioner's trial or the post-*Feingold* definition.  While there is some evidence in the record that Petitioner intentionally killed the victim (*see* T. 402-420: testimony by a medical examiner that the victim's injuries suggested an intentional homicide), there was certainly sufficient evidence that Petitioner acted with the mental state of depraved indifference and that the factual circumstances of his conduct demonstrated depraved indifference to human life.  This evidence included Petitioner's own statements that he beat the victim in order to punish him for defecating on the floor and then put him in bed.  There was also testimony adduced at Petitioner's trial that Petitioner had physically disciplined the victim on numerous prior occasions for wetting his bed and eating too slowly. (T. 320, 434, 436-37, 464, 467-70, 535-36, 570-71, 573-74, 630-31, 650-51, 655, 656-58).  There was also testimony that on prior occasions, Petitioner made the victim stand up all night because he had soiled his bed.  T. 630-32.  Further, when Petitioner's girlfriend returned home on the night of the incident and found the victim unresponsive, Petitioner told her not to call 911 because the victim would be taken away from them.  T. 630-32.  Moreover, the medical testimony established that the victim had been subjected to a vicious beating, which resulted in dozens of internal and external injuries all over the victim's body and that there was also evidence of various older injuries.  This evidence, taken

together, supported a finding that Petitioner committed depraved indifference murder with the requisite mental state in that he exhibited "wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts." *People v. Suarez,* 6 N.Y.3d 202, 275 (2005).

Similarly, trial counsel cannot be deemed ineffective for failing to assert that Petitioner could not be convicted of depraved indifference murder because the evidence established that Petitioner's conduct was intentional. Petitioner's own psychiatric expert testified that Petitioner suffered from a mental disease or defect at the time of the incident and that "[b]ecause Petitioner was in a psychotic state of mind, because he had lost touch with reality, I don't think he knew what he was doing and as a result I don't think he could for[m] the intent to do what he did." T. 728, 757-58. The expert further testified that in "that moment in a psychotic state of mind, [Petitioner] did not believe he was hurting his child." T. 752. Given this testimony, and the nature of the defense presented by trial counsel, counsel would have had no basis to argue that the charges should be dismissed because the evidence established that Petitioner formed a specific intent to kill the victim and any such argument by counsel would have directly undercut Petitioner's affirmative defense. Accordingly, it was objectively reasonable for the Appellate Division to deny Petitioner's claim that appellate counsel was ineffective for failing to assert a claim of ineffective assistance of trial counsel on these grounds.

Relatedly, Petitioner asserts that appellate counsel was ineffective in failing to assert on direct appeal that there was legally insufficient evidence that Petitioner possessed the requisite mental state of depraved indifference to support his conviction under *Feingold* which, Petitioner contends, applies retroactively to his conviction. This claim, however, was unpreserved for

appellate review because trial counsel did not object or move for a trial order of dismissal on this ground.  Appellate counsel cannot be deemed ineffective for failing to raise this unpreserved claim on direct appeal.  *See D'Amico v. Miller,* No. 09 Civ. 4571 (CS) GAY), 2012 WL 2188392 (S.D.N.Y. June 14, 2012) ("Appellate counsel thus could not have been ineffective for failing to raise an unpreserved issue. *See Avincola v. Stinson,* 60 F.Supp.2d 133, 148–49 [S.D.N.Y.1999]. Further, because interests-of-justice review is entirely a matter of discretion, Petitioner cannot meet *Strickland* 's requirement that he demonstrate that a reasonable probability that but for an unprofessional error by his counsel, the result of the proceeding would have been different").  Moreover, appellate counsel was demonstrably aware of *Feingold,* in that counsel argued that, under *Feingold,* the court's charge to the jury was inaccurate in that it referenced an objective standard instead of instructing the jury that depraved indifference was a distinct mental state.  The Appellate Division held that this claim was unpreserved for appellate review and expressly declined to review the claim in the interest of justice.  *Foddrell,* 65 A.D.3d at 1375.  To the extent that the Appellate Division found that Petitioner's *Feingold* claim with respect to the court's jury charge on depraved indifference murder was unpreserved and declined to review the claim in the interest of justice, there is no reason to believe that the Appellate Division would have reached an unpreserved claim that the evidence was legally insufficient under *Feingold.*  In any event, as stated, there was sufficient evidence that Petitioner possessed the mental state of depraved indifference in this case.

Petitioner next claims that appellate counsel was ineffective for failing to challenge the trial court's admission into evidence of the testimony of Dr. Frederick Parker that an examination of the victim revealed that the victim's anus was "gaping," and that Parker was "extremely suspicious that some sort of object had been inserted into [the victim's] rectum."  In response to

this claim, Petitioner's appellate counsel affirmed that he "researched and analyzed" this issue but did not raise a claim with respect to this testimony because, in light of all of the other evidence in the case, he determined that this claim "would not have gotten past the harmless rule," and that this testimony "was not a substantial error and would have been frivolous to raise." D.E. 12, Ex. 11. This explanation by appellate counsel was objectively reasonable in light of the trial record.

Dr. Parker was an emergency room physician who testified, in relevant part, that he did not conduct an internal examination of the victim, that he had a suspicion that something had been placed in the victim's rectum, and that he could not testify to a reasonable degree of scientific certainty that an object had been placed in the victim's rectum. T. 261-305. By contrast, the medical examiner who conducted an internal examination of the victim testified that to a reasonable degree of scientific certainty, no item had been placed in the victim's rectum. T. 401. Thus, the weight of the evidence at trial strongly established that no item had been placed in the victim's rectum. Moreover, given the comprehensive testimony regarding the extensive injuries to the victim, it is inconceivable that the jury in this case convicted Petitioner of depraved indifference murder based on a suspicion that he had inserted something into the victim's rectum. Accordingly, appellate counsel's decision not to raise this claim was objectively reasonable. *See Jones,* 463 U.S. at 754 (appellate counsel is not required to raise every "colorable claim").

Next, Petitioner asserts that appellate counsel was ineffective for failing to claim that the trial court should have stricken Sharell Johnson's testimony or provided a limiting instruction to the jury regarding that testimony because of Johnson's repeated consultations with her attorney during the course of her testimony. This claim, however, was never raised by trial counsel. T.

579-580.  Appellate counsel cannot be deemed ineffective for failing to raise this unpreserved

claim on appeal.  *See D'Amico*, 2012 WL 2188392.

   To the extent that Petitioner is asserting that trial counsel was ineffective for not

requesting that the testimony be stricken or for a limiting instruction, this claim fails.  A trial

court has broad discretion to permit a witness to consult with an attorney during that witness's

testimony.  *See People v. Branch*, 83 N.Y.2d 663 (1994), *citing, Perry v. Leeke*, 488 U.S. 272,

282 (1989).  Johnson had recently been convicted of criminally negligent homicide and

endangering the welfare of a child based on the same factual circumstances that were at issue in

Petitioner's trial and her direct appeal was still pending at the time of her testimony.  D.E. 12, at

57.  Accordingly, she was entitled to assert her right against self-incrimination and the trial court

appropriately honored her invocation of that right by permitting her to consult with counsel

during her testimony.  Additionally, there is no evidence in the record that Johnson's attorney

coached her in any way.  To the contrary, Johnson's attorney specifically informed the court that

he only provided legal advice.  T. 578-79.  Moreover, "jurors are not entitled to draw *any*

inference from invocation of the privilege against self-incrimination, not even as to credibility."

*People v. Seigel*, 87 N.Y.2d 536, 550 (1995) (emphasis in original).  Therefore, Petitioner's trial

counsel would have had no basis on which to move to strike the testimony or to request a

specific jury instruction that the jury could consider Johnson's consultations with her attorney in

evaluating her credibility.

   Petitioner next asserts that appellate counsel was ineffective because counsel did not

argue that trial counsel was ineffective in failing to object to remarks made by the trial court

during jury selection.  Specifically, Petitioner asserts that the court accused defense counsel of

lying in front of the jury, drew a parallel between the instant case and a genocide in Iran, and

suggested that Petitioner "must be found guilty without the juror having heard any of the evidence by either the prosecution or [Petitioner]." Petitioner also asserts that the court improperly questioned a witness with respect to whether the victim's scar was consistent with cigarette burns. When viewed in context, however, none of the court's remarks were improper or objectionable. These remarks certainly did not deprive Petitioner of a fair trial and there is no reasonable possibility that the remarks contributed to Petitioner's conviction.

Preliminarily, the court did not equate Petitioner's conduct with genocide. The record establishes that when a prospective juror informed the court that she could not be fair if she saw pictures of the victim, the court stated that many people say "I don't think I can look at pictures," but that many people looked at the "pictures of the Iran torture victims" and, while those people found the pictures "very upsetting," they listened and "made their own judgments on it." JS. 519. In making this remark, the court was not drawing a parallel between Petitioner's conduct and genocide but, rather, probing the juror's ability to be fair and impartial in the face of graphic images based on her experiences with other graphic images.

Further, the record reflects that when the court informed defense counsel that counsel was making inaccurate statements, the jury was not present. JS. 532-37. Accordingly, to the extent the court accused counsel of lying, there is no basis for Petitioner's claim that this accusation prejudiced the jury. Moreover, the court was permitted to rebut a representation made by defense counsel on the record regarding whether the court's questioning had resulted in a juror crying to the extent that the court disagreed with that representation. To hold otherwise would curtail the court's ability to create a full record of jury selection, which is a critical function of a trial court.

Similarly, there is no basis to Petitioner's assertion that the court suggested that Petitioner intentionally killed the victim and that a prospective juror should find Petitioner guilty without hearing any evidence.  In the portion of the record on which Petitioner relies for this assertion, the court had posited a hypothetical situation to a prospective juror in which a mother killed her child in the belief that by killing the child she would be protecting him from torture by the police.  The court then inquired, "[s]o you would find her guilty, right, of intentional murder?"  When the prospective juror responded "yes," the court inquired, "[y]ou would, even though she didn't understand what was going on at the time?"  The prospective juror responded, "[I] guess you would have to know the facts of it."  The court then asked, "[y]ou would have to know the law, wouldn't you? Wouldn't you have to know the law?"  The prospective juror responded, "[y]es."  T. 520-21.  The clear import of this exchange is that the court was attempting to assess the prospective juror's ability to follow the law and whether the juror would convict someone of intentional conduct who was unaware of "what was going on at the time."  This line of questioning was proper and, contrary to Petitioner's assertion, was seemingly geared toward identifying a juror who would be willing to follow the court's legal instructions with respect to an insanity defense.

Petitioner also asserts that the court's questioning of the People's medical expert regarding whether a certain injury was consistent with a cigarette was improper and that appellate counsel should have addressed this issue on appeal.  Under New York State Law, a trial judge is permitted to play an "active role in the resolution of the truth," and may " 'question witnesses to clarify testimony and to facilitate the progress of the trial,' and, if necessary, to develop factual information." *People v. Adams,* 117 A.D.3d 104, 109 (1st Dept. 2014) (citations omitted).  Indeed, even "if a trial judge makes intrusive remarks that would better have been left

28

unsaid, or questions witnesses extensively, the defendant is not thereby deprived of a fair trial so long as the jury is 'not prevented from arriving at an impartial judgment on the merits.' " *Id.* (citations omitted).  Moreover, " 'in the case of expert testimony, the court's intervention is often necessary to assist the jurors in comprehending matters of specialized knowledge'…and the trial judge is afforded greater leeway." *Id.* (internal citations omitted); *see also People v. Robinson,* 136 A.D.3d 1064 (2d Dept. 2016) ("the defendant was not deprived of the right to a fair trial by the court's brief questioning of one of the People's expert witnesses in order to clarify a confusing issue").  The critical limitation on this judicial power is that "a judge may not 'take [ ] on either the function or appearance of an advocate at trial.' " *Id.* (citations omitted).

Here, the portion of the transcript on which Petitioner relies for this argument reflects that the court asked the expert whether a certain injury on the victim was consistent with a cigarette burn.  The expert said "yes" and then continued being questioned by the prosecutor.  T. 389. Thereafter, trial counsel requested a sidebar and objected to the court's questioning of the expert witness with regard to whether the injury was consistent with a cigarette burn.  The court responded that it could resolve the issue by giving defense counsel "a lot of opportunity to address it.  They're [sic] a lot of things it could be." T. 393.  Accordingly, to the extent Petitioner is asserting that appellate counsel was ineffective for failing to assert that trial counsel was ineffective for failing to preserve an objection to the court's questioning, such claim is belied by the record.  To the extent that Petitioner is claiming that appellate counsel was ineffective in failing to assert on direct appeal that Petitioner was deprived of a fair trial by the court's questioning, the Appellate Division's rejection of this claim was not contrary to or an unreasonable application of Supreme Court precedent.  The court's questioning regarding this single injury was narrowly tailored, limited, and sought to elucidate the nature of the injury for

the jury.  Further, defense counsel extensively cross-examined the medical expert with respect to this testimony and elicited that the injury could be consistent with any number of other causes such as an accidental scrape, or bumping into a cigarette accidentally.  Indeed, the expert described it as "just a prior injury that gives a round scar."  T. 398-99.  Moreover, given the gruesome nature of the numerous other injuries in this case, and the fact that Petitioner was not contesting that he inflicted those injuries, it is inconceivable that the jury convicted Petitioner of depraved indifference murder on the ground that this single injury may have been caused by a cigarette.  Accordingly, appellate counsel could have reasonably concluded that any argument that the court's questioning prevented the jury from arriving at an impartial judgment on the merits, or that the questioning deprived Petitioner of a fair trial, would have likely have been rejected by the Appellate Division in this case, and would have diluted the efficacy of other, stronger arguments raised by appellate counsel.

Lastly, Petitioner's claim that the cumulative effect of appellate counsel's errors deprived him of the effective assistance of appellate counsel is unavailing.  As stated, none of the deficiencies Petitioner attributes to appellate counsel were, in fact, deficiencies, and appellate counsel had objectively reasonable bases for not raising these claims on appeal.  Since there are no errors to aggregate, Petitioner's claim that the cumulative effect of counsel's alleged errors deprived him of the effective assistance of counsel necessarily fails.

For these reasons, the Appellate Division's rejection of Petitioner's claims of ineffective assistance of appellate counsel was not contrary to or an unreasonable application of *Strickland*. Accordingly, this Court concludes and respectfully recommends that Your Honor conclude, that Petitioner's claims of ineffective assistance of appellate counsel should be denied.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the petition should be dismissed in its entirety.  Since Petitioner's claims present no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  *See Rodriguez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  Requests for extension of time to file objections must be made to Judge Seibel.

Dated: Aug 5, 2016
      White Plains, NY

Respectfully Submitted

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been mailed to the Plaintiff.